## Case No. 15,860.

UNITED STATES v. NEID.

[28 Leg. Int. 36; 2 8 Phila. 169; 13 Int. Rev. Rec. 28.]

District Court, W. D. Pennsylvania. 1870.

INTERNAL REVENUE ACT—MANUFACTURE AND SALE OF CIGARS.

[Where cigars are made in the back part of a room, and sold in the front part thereof, the back part is to be regarded as a manufactory, and no cigars can be removed therefrom to the front part without first branding and stamping them.]

McCANDLESS, District Judge. Julius Neid was indicted in the United States district court at Erie for violations of sections 78, 82, 86, and 89 of the act of July 20, 1868 [15 Stat. 125]. The indictment contains five counts: (1) Manufacturing cigars without posting the collector's certificate of the number of cigar makers for whom bond had been given. (2) Not keeping correct books. (3) Removing cigars from the "place of manufacture" to the "place of sale" without stamps, marks, brands, etc., required by law. (4) Selling manufactured tobacco not stamped. (5) Not placing manufacturer's notice on cigar boxes. H. C. Rogers, the collector of the Nineteenth district, accompanied by J. H. Manley, revenue detective assigned to the Western district of Pennsylvania, visited the manufactory of Julius Neid, in the city of Erie, on the 29th of December. The retail department and manufactory were in the same room. Along one side of the room, toward the rear end, were the tables or benches where the cigars were made. On the other side was a counter and show-case, with shelves. On these shelves they found thirty-five boxes of cigars unstamped, and only one of them had the manufacturer's notice. They found a caddy of tobacco open, with part of the tobacco gone, and no stamp upon it.

---

1 [Reported by Hon. William Cranch, Chief Judge.]

2 [Reprinted from 28 Leg. Int. 36, by permission.]

Also two glass jars upon the shelf with plug tobacco in them. There was no collector's certificate posted on the wall. The stamp account showed that he had purchased stamps for 230,700 cigars—while his books showed the sale of 251,800, leaving a discrepancy of some 18,000 cigars, for which no stamps had been bought. The last entry of cigars made, was on Sunday, December 18, 1870. Various lots of tobacco were purchased by him, and not entered in his book.

The defence, which was conducted by E. Camphausen, Esq., turned chiefly on the third count. It was alleged that the whole room was the manufactory—that the cigars found on the shelves were placed there to dry—that none were sold, or removed from the room without stamps, etc.

District Attorney Swoope contended that a fair and proper construction of the act of congress required that the place of manufacture should be kept separate and apart from "the place of sale;" that if both branches of the business were carried on in the same room, there must be a dividing line, and that boxes of cigars could not be placed on shelves where other articles were exposed for sale, until they were stamped, marked, and branded according to law.

McCANDLESS, District Judge, charged the jury substantially as follows:

The defendant is indicted for five distinct offences under the act of congress regulating the manufacture and sale of tobacco and cigars. It may seem to you trifling and unimportant that all these minute details should be specified in an act of congress, or that the government should take cognizance of these apparently mere technical violations of law. But in no other way could the revenue, the great bulk of which is properly derived from liquors and tobacco, be collected. In this case you observe that some 18,000 cigars have been made on which no tax had been paid. When you consider the number of similar establishments all over the land, you can form a proximate idea of the immense aggregate out of which the government would be defrauded. Hence the necessity for these minute specifications in the act of congress, and in the regulations made by the treasury department, which are in effect a part of the law itself. They are designed to secure the collection of the revenue, and would simply prove abortive if they were suffered to be disregarded and disobeyed. The facts, gentlemen, are for you, and you must say whether the defendant is guilty of these several charges, and before you can pronounce him guilty you must be satisfied beyond a reasonable doubt. The defense seems to have been directed more especially to the third count in the indictment, which charges the defendant with the removal of cigars from the place of manufacture without stamps, marks, and brands, required by law.

In McDonald's Case, tried at Pittsburgh, there was a board partition between the place where the cigars were made and where they were sold. The evidence in that case further showed that a work bench was placed in the front room, where one of the hands, when not engaged in retailing, manufactured cigars. We held there that the back room, notwithstanding the bench in the front room, was the manufactory. [Case unreported.] In the case now under consideration, there was no partition—the cigars were made in the back part of the room, and sold in the front. We instruct you that the back part is the manufactory, and no cigars can be removed from that part of the building to the place where they are offered for sale, although it may be in the same room, without first branding and stamping them. Any other construction of the law and the regulations of the department, would deprive the government of a large portion of its legitimate revenue.

The jury, after a brief absence, returned a verdict of guilty on all the counts.